# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

    v.                            Case No. 14-CV-1579

GGNSC ADMINISTRATIVE SERVICES
LLC, GGNSC HOLDINGS LLC, AND
SILVER SPRING OPERATING LLC d/b/a
GOLDEN LIVING CENTER—SILVER
SPRING,

        Defendants.

## DECISION AND ORDER

### Introduction

A number of motions are currently before the court. Defendants GGNSC Administrative Services LLC (Administrative Services) and GGNSC Holdings LLC (Holdings) move for summary judgment on the ground that they did not employ Juanette Roberts (née Barbee), nor were they named as respondents in her charge of discrimination filed with plaintiff Equal Employment Opportunity Commission (EEOC). (ECF Nos. 48-49.) All of the defendants move for summary judgment on

several grounds, including that Roberts was not a qualified individual within the meaning of the Americans with Disabilities Act ("ADA"). (ECF Nos. 50-51.) And plaintiff EEOC moves for partial summary judgment, seeking dismissal of several affirmative defenses contained in the defendants' Answer to Second Amended Complaint. (ECF Nos. 54-55.) All of the motions have been fully briefed and are ready for resolution.

## Factual Background

On August 28, 2008, Juanette Roberts applied for employment at a skilled nursing home doing business as "Golden LivingCenter—Silver Spring" located at 1300 West Silver Spring Drive in Glendale, Wisconsin. (ECF Nos. 35, ¶ 13; 79, ¶ 8.) She was hired as an Activities Assistant on or about September 3, 2008. (ECF No. 79, ¶¶ 8, 10.) About a year later Roberts was moved into a new position that apparently consisted of two roles: Staffing Coordinator and Central Supply Clerk. (ECF No. 79, ¶ 11.) As will be discussed, each role had separate responsibilities.

The nursing home at 1300 West Silver Spring Drive in Glendale, Wisconsin is owned and operated by Defendant Silver Spring Operating LLC (Silver Spring). (ECF No. 81-10 at 5.) This Delaware limited liability company (*id.*) does business using the "Golden Living" trade name. (ECF No. 91, ¶ 55.) The trade name, service marks, and other proprietary materials of "Golden Living" are owned by "Golden Gate National Senior Care, LLC" (ECF No. 82-2, ¶¶ 28-29) – whose parent company is defendant

Case 2:14-cv-01579-WED   Filed 03/28/17   Page 2 of 21   Document 108

Holdings (ECF No. 91, ¶ 29). The proprietary materials are licensed by Golden Gate National Senior Care, LLC to "Golden Living" trade name facilities pursuant to a non-exclusive license agreement. (ECF No. 82-2, ¶ 28.)

Defendants admit that Silver Spring is "controlled by, or under common control" with Golden Gate National Senior Care, LLC, "or [its] parent, [defendant] Holdings." (ECF No. 91, ¶ 30.) Holdings is a limited liability company with headquarters in Plano, Texas. (ECF No. 91, ¶ 25.) None of the parties' submissions speak to what Holdings does, if anything.

Administrative Services is a Delaware limited liability company (ECF No. 82-12 at 3) that is also "controlled by or under common control" of Holdings. (ECF No. 91, ¶ 28.) Pursuant to a contractual relationship, Administrative Services provides services to Golden Living nursing homes. (ECF Nos. 81-7 at 5; 82-14.) Administrative Services's Leave of Absence (LOA) Group provides legal and human resources advice for the Golden Living nursing homes and their employees. (ECF No. 81-7 at 6.)

As Staffing Coordinator at the Silver Spring nursing home, Roberts ensured adequate staffing of the facility, communicated shift needs to employees, and posted schedules. (ECF No. 53-1 at 13.) As Central Supply Clerk, Roberts monitored, inventoried, and distributed the medical supplies of the facility as appropriate. (ECF No. 53-1 at 13.) The written job descriptions for the Staffing Coordinator and Central Supply Clerk positions identify the physical demands of the jobs as including reaching,

3

bending, lifting (minimum of 10 pounds), writing, operating a computer, and answering phone calls. (ECF Nos. 53-14, 53-15.)

On January 4, 2012, Roberts requested leave for a non-work related foot injury under the Family and Medical Leave Act ("FMLA"). (ECF No. 79, ¶ 19.) She was granted FMLA leave from January 16, 2012, until February 22, 2012. (ECF No. 79, ¶ 19.) Roberts's doctor (Dr. Ronald Z. Arnold) wrote a letter stating that Roberts was able to return to work on February 23, 2012, with the restriction that "she can only work at a desk or doing a sitting down job of some sort." (ECF No. 53-21.) Silver Spring did not accept Roberts working with that restriction and instead granted her additional leave, until March 12, 2012, at which time Dr. Arnold stated that she could return to work without restrictions. (ECF Nos. 79, ¶ 21; 53-1 at 20.) On May 8, 2012, Roberts suffered a back injury and was again granted FMLA leave for another week. (ECF No. 79, ¶ 23.)

During this same time period (starting on January 21, 2012) Roberts was supervised by Lakisha Hayden (née Dahm), Silver Spring's Executive Director, and by Brenda Birch, Director of Nursing Services. (ECF No. 79, ¶ 11.) No submissions from the parties identify Birch's employer, although it appears she is, or at the time was, employed by Silver Spring. The EEOC does not contend otherwise. (*See* ECF No. 77 at 15, stating "no GGNSC Administrative Services employee supervised Ms. Roberts' day-to-day activities[.]")

On May 26, 2012, Roberts fell at home and injured her right shoulder. (ECF No. 91, ¶ 86; 53-1 at 29.) After working with the injury for two weeks, Roberts started missing work on June 8, 2012. (ECF No. 79, ¶ 25.) Roberts was provided FMLA leave retroactively upon her request. (*Id*.) Roberts returned to work on June 25, 2012, but left work again two days later because of pain in her shoulder. (ECF No. 79, ¶ 26.) She was again granted FMLA leave upon her request. (*Id*.)

Roberts's FMLA leave covered the period from June 8 until June 25 and from June 27 until July 10, 2012, which is the date that Roberts exhausted her twelve weeks of FMLA leave. (ECF No. 79, ¶ 27.) On July 10, 2012, Administrative Services's LOA Group sent Roberts a letter notifying her that she had exhausted her FMLA entitlement, but telling her in relevant part that she

> may be entitled to additional Medical Leave as an accommodation pursuant to the Americans with Disabilities Act (ADA). If you wish to request such an accommodation, please have your physician complete the attached questionnaire, and return it within twelve (12) days of the date of this letter to the LOA Group, Attn: Tyler Petersen, at the address shown above or via confidential fax at (479) 201-0475. Otherwise, your employment may be separated with eligibility to re-apply in the future for a vacant position for which you are qualified and can perform essential job functions.
>
> If you have any questions about the questionnaire or ADA process, please call Tyler Petersen at (877) 823-8375 ext. 3127.

(ECF No. 53-27.) At her deposition Roberts testified that she spoke with Petersen regarding filing paperwork for an extension of her leave of absence. (ECF No. 53-1 at 25.)

On July 5, 2012, shortly before her FMLA leave was exhausted, Roberts visited Dr. Jonas Slawson, who filled out a "Doctor's Certification of Leave" form (ECF No. 53-26) and a "Physician Questionnaire" form (ECF No. 53-28). By July 23, 2012, either Silver Spring or Administrative Services (it's not clear which) received a fax of both of these documents. (ECF Nos. 53-26, 53-28.) The physician questionnaire stated that Roberts visited Dr. Slawson on July 5, 2012, with "severe right shoulder pain" and the following limitations: "Unable to use right arm. At 7/5/12 office visit—restricted to activities not requiring use of right arm." (ECF No. 53-28 at 1.) Dr. Slawson also noted that he considered the impairment "temporary" and "[a]t 7/5/12 visit she was referred to orthopedic surgeon, Dr. Mlsna, who will further clarify and treat condition—[a]nd determine future disability." (ECF No. 53-28.) The doctor's certification form provided Roberts's "probable duration of condition" as "unknown." (ECF No. 53-26 at 2.)

On July 18, 2012, after Roberts's FMLA leave had been exhausted, Dr. Jacqueline Mlsna saw Roberts for her shoulder injury. (ECF No. 81-20.) In her report Dr. Mlsna noted that the probable duration of Roberts's condition was "several months." (ECF No. 81-20 at 4.) With regard to the "job functions the employee is unable to perform," Dr. Mlsna wrote, "unable to use right arm." (ECF No. 81-20 at 4.) Dr. Mlsna further wrote that the estimated duration of Roberts's incapacity was "unknown—at least 6 wks—may be 3-6 mos." (ECF No. 81-20 at 5.) Dr. Mlsna signed and dated the form August 4,

6

2012, although a fax cover sheet indicates that it was sent to Tricia Evans (a Silver Spring employee (ECF No. 79, ¶ 37)) on August 7, 2012. (ECF No. 81-20 at 1, 6.)

In a letter dated August 6, 2012, Hayden informed Roberts that her employment was terminated. (ECF Nos. 79, ¶ 32; 53-30.) Hayden's letter was drafted by Petersen, who had reviewed Roberts's leave requests and the information from Dr. Slawson. (ECF No. 79, ¶ 33.) Whether Petersen also reviewed Dr. Mlsna's report prior to drafting the termination letter is apparently disputed. He says he did (ECF No. 92-4 at 12), but relying on the fax cover sheet accompanying Dr. Mlsna's report (dated one day after the date of Hayden's termination letter to Roberts) the EEOC contends he could not have. (ECF No. 79, ¶ 33.)

On or about November 29, 2012, Roberts filed an EEOC Charge of Discrimination and Intake Questionnaire related to her termination, naming her employer as "Golden Living Silver Spring" with an address of "1300 W. Silver Spring Dr., Glendale, Wisconsin." (ECF Nos. 79, ¶ 37; 53-33.) Neither Administrative Services nor Holdings were named as respondents on the EEOC charge. (ECF No. 79, ¶ 38.) In a space on the EEOC charge where the claimant is to identify the number of employees the employer had, someone had typed in "500 or more," but Roberts crossed-off "500" and wrote "100" above it. (ECF Nos. 79, ¶ 40; 53-33.)

According to Roberts, she "intended to file her charge against her employer, the nursing home that operates as part of the Golden Living organization." (ECF No. 91,

¶ 4.) On July 17, 2014, the EEOC determined that there was "reasonable cause to believe that there is a violation of the ADAAA in that the Respondent [Golden Living-Silver Spring] denied [Roberts] a reasonable accommodation and discharged her on the basis of her disability." (ECF Nos. 52, ¶ 42; 21-2.) The EEOC sent its determination letter (ECF No. 21-2) naming "Golden Living-Silver Spring" as the respondent to William Kropp (whom it identified as "Assistant General Counsel for Golden Living"), informing him that "the respondent" was invited to engage in conciliation efforts with the EEOC. (ECF Nos. 21-2; 91, ¶ 59). Kropp is an employee of Administrative Services. (ECF No. 91, ¶ 97.)

On December 19, 2014, the EEOC filed this lawsuit against "GGNSC Holdings, LLC, d/b/a Golden LivingCenter--Silver Spring" under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991. (ECF No. 1.) The complaint alleged that

> GGNSC engaged in unlawful employment practices at its Golden Living Center—Silver Spring facility in Glendale, Wisconsin, in violation of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(A) and (B), by denying Ms. Roberts a reasonable accommodation and firing her because of her disability (a shoulder injury that substantially limited her ability to lift and care for herself)… .

(ECF No. 34, ¶ 18.) As relief, the EEOC asked that the court, among other things:

> A. Grant a permanent injunction enjoining GGNSC and its divisions, subsidiaries, officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability; [and]

8

B. Order GGSNC to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices[.]

(ECF No. 1 at 4.) The EEOC also asked for several remedies pertaining to Roberts specifically, including that the court "[o]rder GGNSC to pay Ms. [Roberts] punitive damages for its malicious and reckless conduct described in paragraph 11 above, in an amount to be determined at trial." (ECF No. 1 at 5.)

The EEOC later amended its complaint, naming "GGNSC Holdings Inc. and Silver Spring Operating LLC, d/b/a Golden LivingCenter—Silver Spring" as defendants. (ECF No. 4.) In response to a motion to dismiss filed by Holdings, the EEOC amended its complaint a second time, naming "GGNSC Administrative Services LLC, GGNSC Holdings LLC, and Silver Spring Operating LLC, d/b/a Golden LivingCenter—Silver Spring" as defendants. (ECF No. 34.)

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit" under the applicable substantive law and a dispute is "genuine" if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "courts are required to view the facts

and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007), "the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor" to survive summary judgment. *Fleishman v. Cont'l. Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

## Motion for Summary Judgment by Holdings and Administrative Services

Administrative Services and Holdings seek summary judgment on the ground that neither entity employed Roberts and neither was named in her EEOC charge. The EEOC responds that "Golden Living" generally operates as one entity and therefore all defendants were both on notice from Roberts's EEOC charge that her claim was against all of them and they were all subject to liability as her employer.[1]

Generally, a party not named in an EEOC charge is not subject to suit under the ADA. *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991). An exception exists where the unnamed party is provided notice of the charge and has an opportunity to conciliate. *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981). While neither Holdings nor Administrative Services were expressly named in the charge, Administrative Services was involved in the leave of absence

---

[1] Resolving this summary judgment motion would involve sorting out the relationship amongst the corporate defendants. To explain those relationships, Holdings and Administrative Services submit two declarations from Krista Elmore (ECF Nos. 53-5 and 92-6), who works as a Licensing Coordinator within the legal department of GGNSC Administrative Services, LLC. Neither declaration states that the facts set forth therein are based on Elmore's personal knowledge. Thus, both violate Fed. R. Civ. P. 56(c)(4). None of the defendants' other declarations (ECF Nos. 53, 70, 76, 92) suffer from the same defect.

10

decision and one of its employees (William Kropp) received the EEOC determination letter. Thus, while Holdings appears to fall under the general rule that it is not subject to suit because it was not named in Roberts's EEOC charge, Administrative Services presents a closer question regarding whether the *Eggleston* exception should apply.

As for who "employed" Roberts, the EEOC asks the court to find that "Golden Living" is a single entity that encompasses all three defendants. While the record does not indicate that a general, "Golden Living" entity exists, it does show that Administrative Services – and Tyler Petersen in particular—was intimately involved in the decision to fire Roberts.

But given the court's conclusion on the merits of the summary judgment motion filed by all defendants, resolution of the motion filed by Holdings and Administrative Services is unnecessary.

### Motion for Summary Judgment by all Defendants

All defendants move for summary judgment, contending that (1) Roberts cannot prove her failure to accommodate or disparate treatment discrimination claims; (2) the EEOC is not entitled to injunctive relief; and (3) the EEOC is not entitled to punitive damages. (ECF No. 50.) All parties have consented to the jurisdiction of a magistrate judge (ECF Nos. 2, 10, 11), and the matter being fully briefed (ECF Nos. 51, 78, 90, 96, 102) is now ready for resolution.

**ADA Claims**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . hiring, advancement, or discharge of employees… ." 42 U.S.C. § 12112(a). "Under the ADA, there are two types of discrimination claims: failure to accommodate and disparate treatment." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 n. 4 (7th Cir. 2015) (citing *Basith v. Cook Cnty.*, 241 F.3d 919, 927 (7th Cir. 2001)).

**Failure to Accommodate**

Within its definition of "discriminate against a qualified individual on the basis of disability," the ADA includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(A), (B). The EEOC alleges that the defendants violated both of these provisions when they terminated Roberts. (ECF No. 34, ¶ 18.)

"To establish a prima facie case for failure to accommodate, 'a plaintiff must show that: (1) [she] is a qualified individual with a disability; (2) the employer was aware of [her] disability; and (3) the employer failed to reasonably accommodate the

disability.'" *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (quoting *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011)). "To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of [plaintiff's prima facie case]." *James*, 707 F.3d at 782. For purposes of this motion, the defendants concede that they were aware of Roberts's disability. (ECF No. 51 at 3.)

Defendants argue that Roberts was not a "qualified individual" with a disability because she required an indefinite leave of absence. And an employee who requires an indefinite leave is not a qualified individual under the ADA. *See Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). They maintain that Petersen made his recommendation that Roberts be terminated based on the opinions of Dr. Slawson and Dr. Mlsna that Roberts would be unable to use her right arm for an unknown period of time. (ECF No. 79, ¶ 33.) And even if he had not yet seen Dr. Mlsna's report at the time he made his recommendation that Roberts be terminated, Dr. Mlsna's opinion merely confirmed what the defendants already knew from Dr. Slawson: Roberts was "unable to use her right arm" and the duration of that restriction  was "unknown." (ECF No. 81-20 at 5.) Roberts's testimony at her deposition admitted that she needed to use her right arm to do her job:

> Q: And I think we probably can agree, based on what you described to me on what you do on a day-to-day and a weekly basis, you have to be able to use your right arm to be able to perform your job functions, correct?

Case 2:14-cv-01579-WED   Filed 03/28/17   Page 13 of 21   Document 108

A: Correct.

(ECF No. 53-1 at 24.)

In response, the EEOC contends that the evidence shows that Roberts could, with or without reasonable accommodation, perform the essential functions of her job when she was fired. In support, the EEOC offers a declaration of Roberts (ECF No. 80) that states that she could have performed all of her Scheduling Coordinator duties and *most* of her Central Supply Clerk duties with one arm. She concedes that she would have needed another person's help to move boxes from the loading dock to the stock room, which she estimates would take two to three hours per week. (ECF No. 80, ¶ 9.)

As for Dr. Mlsna, the EEOC's surreply brief contends that although it identified her as an expert witness, it did so "only [as] an expert on Ms. Roberts's impairment, not on her ability to perform the essential functions of her job." (ECF No. 96 at 1.) And when she gave her opinion, Dr. Mlsna did not know what Roberts's job duties were or how she performed them. As a result, the court should disregard her testimony that Roberts could not have performed the essential functions of her jobs. (ECF No. 96 at 2.)

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). A court making the "qualified individual" determination applies a two-step test. *Stern*, 788 F.3d at 285. "First, we consider whether the individual satisfies the prerequisites for

the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id*. (quoting *Basith*, 241 F.3d at 927). "If [she] does, then we must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id*; *see also Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 417 (7th Cir. 2016) (applying two step-process). "'In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation.'" *Wheatley*, 826 F.3d at 418 (quoting *Basden v. Prof'l. Transp. Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)). A request for medical leave is reasonable only if it is for a short amount of time, *see Byrne*, 328 F.3d at 381, and cannot be indefinite. *See Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998).

The EEOC's contention that Roberts could have performed her duties without any accommodations is not supported by the record. Once she injured her shoulder, the injury forced her miss work. (ECF No. 79, ¶ 25.) And leave was the only accommodation she sought. (ECF No. 91, ¶ 88) When Roberts tried to come back to work on June 25, 2012, she lasted only two days before experiencing shoulder pain that required her to take additional leave. (ECF No. 79, ¶ 26.) If she could have performed her duties without any accommodations at the time of her termination, she certainly wasn't. And at no time did she communicate to the defendants that she was ready to

come back to work without any accommodations. Nor does Roberts's declaration state that she could have performed her job without any accommodations.

The question is whether Roberts could perform her duties *with* reasonable accommodations. If not, then she is not a qualified individual within the meaning of the ADA. In opposing the defendants' summary judgment motion, the EEOC suggests a variety of accommodations that would have enabled Roberts to do her job—e.g., wear a headset telephone to answer the phone, use voice recognition software in lieu of typing on a computer, etc. (ECF No. 78 at 10-11.) Although Roberts never suggested any of these accommodations to the defendants, the EEOC's position is that it was incumbent upon the defendants to explore with Roberts possible accommodations that would have enabled her to perform her duties.

It is true that the ADA requires an employer of a disabled employee to engage in an "interactive process"—a "flexible give-and-take with the disabled employee…[to] determine what accommodation would enable the employee to continue working." *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). However, "[f]ailure of the interactive process is not an independent basis for liability under the ADA." *Stern*, 788 F.3d at 292 (quoting *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n. 1 (7th Cir. 2014)). "Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the

Case 2:14-cv-01579-WED   Filed 03/28/17   Page 16 of 21   Document 108

question of whether she was able to perform the essential functions of her job with an accommodation." *Id*. (quoting *Basden,* 714 F. 3d at 1039). "[W]hen no reasonable accommodation is possible the failure to jaw about accommodation is harmless." *Mays v. Principi*, 301 F.3d 866, 871 (7th Cir. 2002).

The only evidence the EEOC offers to support its argument that Roberts was able to perform the essential functions of her job with accommodations is a declaration from Roberts. The EEOC intentionally does not rely on the opinions of either Dr. Slawson or Dr. Mlsna, both of whom reported to the defendants that Roberts would be unable to use her right arm for an extended, unknown period of time. (ECF Nos. 53-26; 53-28; 81-20.)

In her declaration Roberts first sets forth her duties as Staffing Coordinator and then says that she could have done them all with two accommodations: a step stool to post documents on bulletin boards where she had to reach overhead, and the use of a computer to complete forms that she previously completed by hand. (ECF No. 80, ¶ 5.) However, by her own admission, her duties as Staffing Coordinator consisted of more than posting documents on a bulletin board and filling out forms. She also had to call people on the phone, type on the computer, and store documents in file cabinets. (ECF No. 80, ¶ 4.) Roberts does not explain how she could perform these duties without the use of her "dominant extremity" (ECF No. 79, ¶ 30)—her right arm. Although the

EEOC'S brief suggests accommodations that would enable Roberts to accomplish these tasks, those suggestions have no evidentiary basis.

Roberts also describes her various duties as Central Supply Clerk, including receiving and stocking supplies. (ECF No. 80, ¶ 7.) She contends that she could have done "most" of her duties with one arm, with the only exception being moving supply boxes from a loading dock to the stock room. However, she concedes she would have needed more help than just moving boxes: "I could have done my job if someone would have helped me cut the plastic, move the boxes from the pallet onto the cart, push or pull the cart to the stock room, and unload the boxes there." (ECF No. 80, ¶ 9.) She estimates that this work that she admittedly could not do would take about two to three hours per week. (*Id*.)

The problem with Roberts's declaration is that it does not explain *how* she could have performed her Central Supply Clerk duties with just her left arm. Indeed, her declaration conflicts with the opinion of Dr. Mlsna, who when asked at her deposition about Roberts's ability to perform stocking duties testified that "under the amount of pain that [Roberts] was describing, and the distress that she was in, and the absolute inability to use her dominant extremity, I would not expect her to be able to perform her job." (ECF No. 53-3 at 9-10.) Regardless of whether the EEOC identified Dr. Mlsna as an expert on Roberts's ability to perform the essential functions of her job or on her

limitations, the fact remains that when told that one of Roberts's job responsibilities was stocking, Dr. Mlsna opined that Roberts would not be able to perform that job.

In *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412 (7th Cir. 2016), the court found that the plaintiff's conclusory statements in her affidavit that she could perform her job while wearing a medical boot were not supported by the facts. The court noted the plaintiff "presented no medical evidence to indicate the utility of the medical boot or her capabilities in the boot." *Id*. at 420. "[B]y her own admission, she chose to present only her personal observations as evidence to demonstrate that she was a qualified individual." *Id*. In affirming the district court granting summary judgment for the defendant, the court stated:

> [T]he evidence presented by Wheatley is insufficient to allow a jury to conclude that she could perform the essential duties of the position if permitted to wear the medical boot and forego the ladder duties. Her mere hope or belief, unsupported by evidence supporting those conclusions, is insufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation.

*Id.* at 421.

As with the plaintiff in *Wheatley,* all Roberts offers in support of her position that she was able to perform her duties with accommodations are conclusory statements in her own declaration. She offers no evidence (medical or otherwise) showing *how* she could perform her stocking duties without the use of her right (dominant) arm. And the only accommodation she requested was indefinite leave. Lastly, Roberts's declaration also conflicts with her deposition testimony, in which she conceded that she needed to

use both of her arms to perform her lifting and stocking responsibilities, among others. (ECF No. 53-1 at 14-15, 24.)

Without more, Roberts's declaration is insufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation. *See Basith*, 241 F.3d at 930 ("[Plaintiff provides no evidence to substantiate this claim [that he could perform the job with a wheelchair], such as a report from his doctor that he could fully perform the delivery function with his proposed wheelchair…. [Plaintiff]'s bare assertion that a wheelchair would accommodate his inability to perform delivery of medications is sheer speculation.").

In sum, the court finds that the EEOC has failed to meet its threshold burden of demonstrating that Roberts was a qualified individual who could have performed the essential functions of her job with reasonable accommodations. That removed her from the class protected by the ADA. *See Byrne*, 328 F.3d at 380-81; *Teague v. Northwestern Mem. Hosp.*, 492 F. App'x 680, 684-85 (7th Cir. 2012) (an employee is no longer qualified once she is unable to work in any capacity); *Basden*, 714 F.3d at 1037 ("[a] plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes.").

Thus, the court finds that summary judgment is appropriate as to the EEOC's failure to accommodate claim.

## II. Disparate Treatment

To establish disparate treatment, Roberts must show that "[she] is disabled within the meaning of the ADA, that [she] is qualified to perform the essential functions of the job, either with or without reasonable accommodation, and that [she] suffered from an adverse employment action because of [her] disability." *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). Because the EEOC has failed to present sufficient evidence for a jury to conclude that Roberts was qualified to perform her essential job functions with or without reasonable accommodations, summary judgment for the defendants is warranted on this claim as well.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 50) is **granted**. The action is dismissed, with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the defendants Administrative Services's and Holdings's motion for summary judgment (ECF No. 48) is **denied as moot.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 54) is **denied as moot.**

Dated at Milwaukee, Wisconsin this 28th day of March, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge